## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILMINGTON TRUST, NATIONAL | : | |
| ASSOCIATION, AS TRUSTEE FOR THE | : | |
| REGISTERED HOLDERS OF RBS | : | |
| COMMERCIAL FUNDING, INC., | : | |
| COMMERCIAL MORTGAGE PASS-THROUGH | : | |
| CERTIFICATES, SERIES 2014-C21, | : | |
| Plaintiff, | : | Civil No. 5:24-cv-04627-JMG |
| | : | |
| v. | : | |
| | : | |
| CEDAR CREST PROFESSIONAL PARK VII LP, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**GALLAGHER, J.**                                                **June 6, 2025**

## I.    INTRODUCTION

Plaintiff Wilmington Trust made a loan to Defendant Cedar Crest Professional Park in the amount of $60,000,000.00. That loan is secured by a mortgage on Defendant's property, which is used primarily as a medical health center campus. The written contract between the parties is clear. If a default occurs and is ongoing, then Plaintiff has both the right to seize rents without having to disburse that money for operating expenses and to appoint a receiver to manage the property. Defendant takes issue with the harsh consequences of both terms. But such is the agreement reached by the sophisticated parties here. So Plaintiff is entitled both to summary judgment on all claims and to the appointment of a receiver.

## II.    BACKGROUND

On June 20, 2014, Plaintiff loaned $60,000,00.00 to Defendant. ECF No. 37 at ¶ 1. The loan is secured by an Open-End Mortgage on the property. *Id*. at ¶ 5. Under the Loan Agreement, the maturity date for the loan was July 1, 2024. *Id*. at ¶ 12. That day came and went without

Plaintiff paying the debt. *Id*. The debt remains unpaid, and Defendant has not made any direct payments to Plaintiff since that day. *Id*. Defendant's failure to pay the debt is an event of default under the terms of the Loan Agreement. *Id*. at ¶ 14.

Because of Defendant's default, Plaintiff brought this commercial foreclosure action on September 3, 2024. *See* ECF No. 1. Less than two months later, on October 21, 2024, Plaintiff moved under Federal Rule of Civil Procedure 66 for the appointment of a receiver to collect rents and manage the property. *See generally* ECF No. 15. Even though the Court agreed that the terms of the mortgage gave Plaintiff a right to the appointment of a receiver in the event of a default, it denied the motion because there was not enough evidence to establish that Defendant defaulted on the loan. *See* ECF No. 28 at 1 n.1.

Plaintiff now moves for a second time to appoint a receiver, relying on the same theory that the mortgage gives it a contractual right to the appointment of a receiver. *See generally* ECF No. 29. It also moves for summary judgment, claiming that it should prevail on all the claims in the case. *See generally* ECF No. 31. Defendant not only opposes both Plaintiff's motions, but also moves for summary judgment on its unjust enrichment claim, arguing primarily that Plaintiff acted improperly in this case by sequestering the property's rent income and refusing to use that money for the property's operation. *See generally* ECF Nos. 30, 32, 37.

## III.    LEGAL STANDARD

### a.  Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*,

954 F.3d 615, 618 (3d Cir. 2020). A fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019); *see also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003) ("When analyzing the evidence under this summary judgment standard, a court is not to weigh the evidence or make credibility determinations; these tasks are left for the fact-finder." (internal quotation marks omitted)). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

**b.  Motion to Appoint a Receiver**

"A district court, in its discretion, may appoint a receiver to collect rents and profits and manage the property during the pendency of a foreclosure proceeding." *U.S. Bank Nat'l Ass'n for Registered Holders of ML-CFC Com. Mortg. Tr. 2007-6 v. FPG Bridgewater Owner One, LLC*, 2018 WL 2269248, at *2 (D.N.J. May 17, 2018) (quoting *United States v. Berk & Berk*, 767 F.

Supp. 593, 597 (D.N.J. 1991)). The Third Circuit has explained "that the appointment of a receiver is an extraordinary remedy that is not to be invoked 'if milder measures will give the plaintiff . . . adequate protection for his rights.'" *U.S. Bank Nat'l Ass'n v. B-R Penn Realty Owner, LP.*, 2021 WL 1721863, at *2 (E.D. Pa. Apr. 29, 2021) (quoting *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942)) (other citations omitted).

There is no clear rule for determining whether appointment of a receiver is appropriate. Instead, "the following factors guide the Court in its exercise of discretion: 'the property is inadequate security for the loan; the mortgage contract contains a clause granting the mortgagee the right to a receiver; the continued default of the mortgagor; the probability that foreclosure will be delayed in the future; the unstable financial status of the mortgagor; [and] the misuse of project funds by the mortgagor.'" *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 614 (D.N.J. 2012) (quoting *Berk & Berk*, 767 F. Supp. at 597) (other citations omitted).

When the moving party seeks a receiver who will not only collect rents but also manage the property, the Court must consider additional factors including: "[1] the danger of waste; [2] delays in foreclosure; [3] the defendant's fraudulent conduct; [4] imminent danger that property will be lost, concealed, injured, diminished in value, or squandered; [5] the inadequacy of the available legal remedies; [6] the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; [7] and the plaintiffs probable success in the action and the possibility of irreparable injury to his interests in the property." *Wells Fargo Bank, N.A. v. Premier Hotels Grp., LLC*, 2015 WL 404549, at *10 (M.D. Pa. Jan. 29, 2015) (quoting *CCC*, 905 F. Supp. 2d at 614-15) (citations omitted).

IV.    **DISCUSSION**

a.  **Plaintiff's Foreclosure Claim Succeeds**

In commercial mortgage foreclosure actions, "federal courts apply the law of the state in which the property is located*." Chuong Van Tran v. SN Servicing Corp.*, 2018 WL 1875221, at *2 (E.D. Pa. Apr. 18, 2018). So Pennsylvania law controls this case since that is where the property here is located. Under Pennsylvania law, "[t]he holder of a mortgage has the right, upon default, to bring a foreclosure action." *Bank of Am., N.A. v. Gibson*, 102 A.3d 462, 464 (Pa. Super. 2014) (citing *Cunningham v. McWilliams*, 714 A.2d 1054, 1056-57 (Pa. Super. 1998)). "The holder of a mortgage is entitled to summary judgment if the mortgagor admits that the mortgage is in default, the mortgagor has failed to pay on the obligation, and the recorded mortgage is in the specified amount." *Id*. at 465.

Here, Plaintiff says that all three elements are met. It claims that the mortgage is default because the maturity date for payment of the debt was July 1, 2024, and the debt remains outstanding, that Defendant has not paid the debt, and that the mortgage is in the amount of $60,000,000.00 with a principal balance due in the amount of $48,771,229.15. *See* ECF No. 31-3 at 8-9. Defendant does not dispute any of these claims. *See* ECF No. 37 at 6-7. That alone should resolve this issue.

Defendant claims, however, that the Court should exercise its equity powers to stave off Plaintiff's efforts to foreclose on the property. Specifically, Defendant says that under the reasonable expectations of good faith and fair dealing, the foreclosure action should be denied because it has continued to operate the property successfully despite the facts that COVID-19 caused financial setbacks and that Plaintiff has failed to help in maintaining the property. *See id*. at 6-11 (citing *Fleet Real Est. Funding Corp. v. Smith*, 530 A.2d 919, 923 (Pa. Super. 1987)). Although Pennsylvania law allows a court to restrict a mortgagee from foreclosing on a property

under the expectation of good faith and fair dealing, that power has been used when a mortgagee has not complied with "forbearance provisions of the HUD Handbook and regulations." *Smith*, 530 A.2d at 923. Defendant does not allege that Plaintiff failed to comply with any regulations. And even though it brings a counterclaim for breach of contract against Plaintiff, it provides no legal authority supporting the theory that a contractual breach allows a court to prevent a mortgagee from foreclosing on a property. So, because "the elements for a mortgage foreclosure action under Pennsylvania law are undisputed," Plaintiff is entitled to summary judgment on this issue. *See Wells Fargo Bank, N.A. for Registered Holders of J.P. Morgan Chase Com. Mortg. Sec. Tr. 2007-CIBC 18, Com. Mortg. Pass-Through Certificates, Series 2007-CIBC18 v. 2600 E. Carson St. Assocs., L.P.*, 2018 WL 1183220, at *3 (W.D. Pa. Mar. 7, 2018).

   **b.  Defendant's Breach of Contract Claim Fails**

To form a contract, "there must be an offer, acceptance, and consideration or a mutual meeting of the minds." *Ribarchak v. Mun. Auth. of City of Monongahela*, 44 A.3d 706, 708 (Pa. Commw. Ct. 2012) (citation omitted). Three things are necessary to show breach of contract: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Burlington Coat Factory of Pennsylvania, LLC v. Grace Const. Mgmt. Co., LLC*, 126 A.3d 1010, 1018 (Pa. Super. 2015) (quoting *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002)).

Plaintiff also moves for summary judgment as to Defendant's breach of contract claim, asserting that the plain language of the CMA defeats it. The breach of contract counterclaim alleges that Plaintiff, under the terms of the Loan Agreement and CMA, "has the right to sequester rental income during an ongoing Cash Trap Event and has the obligation to ensure that operating expenses and other costs necessary to maintain and operate the Property are paid from those rents." ECF No. 11 at ¶ 66. Plaintiff breached the loan contacts, the counterclaim states, by failing to pay

the operating expensing during the ongoing Cash Trap Event. *Id*. at ¶ 67. Plaintiff challenges that reading of the Loan Agreement and CMA. It says that it has a duty to disburse funds to Defendant to pay for the property's operating expenses "provided no Event of Default has occurred and is continuing." ECF No. 31-3 at 11-12. Because Defendant admits that a default has occurred and is ongoing, Plaintiff argues that it has not breached the contract between the parties because it does not have a duty to pay the operating expenses in this circumstance. *Id*.

The Court agrees that summary judgment must be entered for Plaintiff on this claim. Defendant's response at this stage is that Plaintiff owed it a duty of good faith and fair dealing and violated that duty by failing to fund both the property's operating expenses and tenant improvements. *See* ECF No. 37 at 12-13. Of course, Pennsylvania law recognizes a duty of good faith and fair dealing between lenders and borrowers. *See Creeger Brick & Bldg. Supply, Inc. v. Mid–State Bank & Trust*, 560 A.2d 151 (Pa. Super. 1989). That duty, however, is "limited" and has been found to be applicable when lenders fail to make good on their promises. *See CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1059 (Pa. Super. 1999). At summary judgment, Defendant does not identify how Plaintiff violated any contractual terms and seems to concede that Plaintiff's interpretation of the Loan Agreement and CMA is correct by failing to respond to this issue. *See* ECF No. 37 at 12-13. This omission is fatal. *See McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010) ("[A]bsent is any allegation the City breached a contractual duty, or that damages resulted from that breach.").

But even if the Court focuses instead on the argument raised in the counterclaim itself, which, as explained above, does address the interpretation issue, the Court agrees that the plain language of the CMA establishes that Plaintiff does not have to pay operating expenses during a Cash Trap Event when there is an ongoing default. *See* ECF No. 31-3 at 11-12. Section 1(v) of the CMA explains that a Cash Trap Event can occur in three scenarios: the occurrence of an event of

7

default, the debt service coverage ratio being less than 1.20 or 1.00, or a go dark event. *See* ECF No. 31-4 at P1009978. Under Section 5(b), Plaintiff is required to disburse the money captured during the Cash Trap Event to fund expenses for the property, including operating costs, in a certain order of priority "provided no Event of Default has occurred and is continuing." *See id.* at P1009982. Because it is admitted here that the Cash Trap Event was triggered by Defendant's admitted and continuing default, Section 5(b) is inapplicable, and Plaintiff does not have to disburse the funds to pay for the property's operating costs. *See* ECF No. 31-3 at 8; *see also* ECF No. 37 at 6. Holding otherwise would "rewrite" the CMA or "give it a construction in conflict with the accepted and plain meaning of the language used." *Metro. Life Ins. Co. v. Liberty Ctr. Venture*, 650 A.2d 887, 890 (1994). Thus, Defendant's breach of contract claim does not move past summary judgment.

### c. Defendant's Unjust Enrichment Claim Fails

Unjust enrichment "requires [one party] to pay to the [other] the value of the benefit conferred." *Durst v. Milroy Gen. Contracting, Inc.*, 52 A.3d 357, 360 (Pa. Super. 2012). Like in the breach of contract context, there are three things necessary to prove unjust enrichment: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Artisan Builders, Inc. v. Jang*, 271 A.3d 889, 892 (Pa. Super. 2022) (quoting *id.*). Unjust enrichment claims usually "fall into one of two categories: (1) a quasi-contract theory of liability, where the unjust enrichment claim is brought as an alternative to a breach of contract claim; or (2) a companion theory of liability, where the unjust enrichment claim is a companion to a tort claim and seeks to divest the defendant of a benefit obtained by committing the tort." *Symphony FS Ltd. v. Thompson*, 2018 WL 6715894, at *9 (E.D. Pa. Dec. 20, 2018) (internal quotation marks and citation omitted).

Even though unjust enrichment is the only claim that Defendant actively moves on for summary judgment in its favor, it must be dismissed. Defendant says that it conferred on Plaintiff a benefit by paying for the property's operating expenses during the Cash Trap Event and that it would be unfair for Plaintiff to retain that benefit without payment. *See* ECF No. 32-1 at 2-4. But, in Pennsylvania, "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings." *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 169-70 (3d Cir. 2014) (quoting *Wilson Area Sch. Dist. v. Skepton*, 586 Pa. 513, 895 A.2d 1250, 1254 (2006)) (citations omitted). Defendant attempts to circumvent this rule by arguing that the contract here is silent as to whether Plaintiff must reimburse Defendant for the money it spent operating the property during the Cash Trap Event. Regardless of what the contract says, however, Plaintiff concedes its existence. *See* ECF No. 37 at ¶ 1. So the unjust enrichment claim cannot survive summary judgment. *See id.*; *see also Gorecki v. Clearview Elec., Inc.*, 338 F. Supp. 3d 470, 476 (W.D. Pa. 2018).

### d.  Defendant's Promissory Estoppel Claim Fails

Promissory estoppel "makes otherwise unenforceable agreements binding." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000). Under Pennsylvania law, a plaintiff establishes promissory estoppel by showing three things: "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *MRO Corp. v. Humana Inc.*, 383 F. Supp. 3d 417, 423 (E.D. Pa. 2019) (quoting *Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003)) (citation omitted).

Plaintiff is also entitled to summary judgment on this claim. Defendant contends that there was an "implicit" promise on Plaintiff's behalf to maintain the value of the property during the Cash Trap Event. *See* ECF No. 37 at 15. This argument fails to provide any evidence of "an express promise." *Okna Windows v. Diversified Structural Composites*, 2019 WL 3777632, at *8 (E.D. Pa. Aug. 12, 2019) (collecting cases). Given this shortcoming, the court grants summary judgment on promissory estoppel in Plaintiff's favor.

### e.  Defendant's Breach of Fiduciary Duty Claim Fails

The Pennsylvania Supreme Court has characterized a fiduciary duty as "the highest duty implied by law." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819 (Pa. 2017) (citation omitted). To prevail on a breach of fiduciary duty claim, a plaintiff "must establish that a fiduciary or confidential relationship existed between the plaintiff and the defendant, that the defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit, and that the plaintiff suffered an injury caused by the defendant's breach of fiduciary duty." *Save Our Saltsburg Sch. v. River Valley Sch. Dist.*, 285 A.3d 692, 700 (Pa. Commw. Ct. 2022).

As this Court has previously explained, "Pennsylvania law follows the well recognized principle that a lender is not a fiduciary of the borrower." *Lapensohn v. Hudson City Sav. Bank*, 2020 WL 4704948, at *8 (E.D. Pa. Aug. 13, 2020) (citations omitted). However, "a fiduciary relationship may arise if the lender gains substantial control over the borrower's business affairs." *Temp-Way Corp. v. Cont'l Bank*, 139 B.R. 299, 318 (E.D. Pa. 1992) (citations omitted). "Control over the borrower is demonstrated when there is evidence that the lender was involved in the actual day-to-day management and operations of the borrower or that the lender had the ability to compel the borrower to engage in unusual transactions." *Id.* (citations omitted).

The record does not establish the existence of a fiduciary relationship. Defendant says that a fiduciary duty exists in this case because Plaintiff sequestered the rent income through the Cash

Trap Event mechanism to gain control over Defendant's business affairs. *See* ECF No. 37 at 17-18. The Court disagrees. Even though Plaintiff used the Cash Trap Event to capture rents, Defendant provides no proof that it relies on Plaintiff for any "financial advice, direction and/or corporate strategy." *Temp-Way Corp.*, 139 B.R. at 319. This shows that Plaintiff does not control Defendant's operations. Supporting this conclusion is the fact that Plaintiff has moved to appoint a receiver to wrest control of the property away from Defendant. *See generally* ECF No. 29. Plaintiff's decision to sequester rents then "was normal and necessary to an arms-length lender/borrower relationship" and does not give rise to a fiduciary relationship. *Id.*

Even if a fiduciary relationship existed, the gist of the action bars Plaintiff's fiduciary duty claim. "The gist of the action doctrine focuses on the source of the claims to evaluate whether tort claims pleaded along with contract claims constitute freestanding causes of action." *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 499 (E.D. Pa. 2008) (citation omitted). "Additionally, a breach of fiduciary duty claim is barred by the gist of the action doctrine if the fiduciary duty alleged is grounded in contractual obligations." *Hatchigian v. Cap. One, N.A.*, 2024 WL 4906489, at *6 (E.D. Pa. Nov. 27, 2024) (internal quotation marks and citation omitted). Here, Defendant alleges that Plaintiff violated its fiduciary duty by seizing the rental income paid by the property's tenants. As explained before, the terms of the CMA "cover" this claim. *See Alpart*, 574 F. Supp. 2d at 500. So the breach of fiduciary claim does not survive summary judgment.

### f.  Plaintiff's Motion to Appoint a Receiver Succeeds

Although the Third Circuit has not yet specified which factors a court must weigh in determining whether to appoint a receiver, courts in this Circuit consider whether "the property is inadequate security for the loan; the mortgage contract contains a clause granting the mortgagee the right to a receiver; the continued default of the mortgagor; the probability that foreclosure will be delayed in the future; the unstable financial status of the mortgagor; [and] the misuse of project

funds by the mortgagor.'" *CCC*, 905 F. Supp. 2d at 614. When, as here, "the moving party seeks a receiver who will not only collect rents and profits, but will also manage and operate the mortgaged property pending foreclosure," courts must be "particularly cautious in appointing a receiver." *Id*. (internal quotation marks and citations omitted).

The final issue in this case is Plaintiff's assertion that it is proper to appoint a receiver to collect rents as well as manage the property. Plaintiff's second motion rests largely on the same theory that the first one did—that the terms of the mortgage require the appointment of a receiver in the event of a default by Defendant. In relevant part, Section 8.1(g) of the mortgage provides: "Upon the occurrence . . . of any event of Default, Borrower agrees that Lender may . . . apply for the appointment of a receiver . . . whose appointment Borrower expressly consents to take possession of and to operate the Property and to collect the Rents and to otherwise protect and preserve the Property." *See* ECF No. 1 at Exhibit C. Although this Court previously agreed with Plaintiff that the mortgage's plain language requires the appointment of a receiver when a default occurs, it denied the first motion because the record did not clearly establish the alleged default. *See* ECF No. 28 at 1 n.1.

Because the facts are clearer now, Plaintiff's second motion to appoint a receiver succeeds. Defendant has admitted that it defaulted on the loan by failing to pay the debt on July 1, 2024. *See* ECF No. 31-3 at 8; ECF No. 37 at 6. Because of this default, Plaintiff has a contractual right to the appointment of a receiver, which weighs heavily in favor of granting the motion. *See Wells Fargo Bank, N.A. for Morgan Stanley Cap. I Inc., Com. Mortg. Pass-through Certificates, Series 2006-IQ12 v. Lichter Gateway IV, LLC*, 2017 WL 5957072, at *6 (D.N.J. Dec. 1, 2017) ("The presence of a contractual stipulation to the appointment of a receiver 'is given considerable weight in the court's evaluation of whether a rent receiver should be appointed.'"). Additionally, Plaintiff's financial condition seems unstable given its ongoing default. *See Iowa Square Realty LLC v. JSMN*

*Shenango Valley Mall, LLC*, 2018 WL 814745, at *3 (W.D. Pa. Feb. 9, 2018). "In fact, Defendant does not dispute its continued Default or any allegations of noncompliance, trying to focus the Court's attention on Plaintiff's conduct." *ICON PSG 1 FL, LLC v. Jenkins Ct. Realty Co., L.P.*, 2025 WL 589206, at *4 (E.D. Pa. Feb. 21, 2025). But even the conduct Defendant complains about cuts in favor of granting the motion because appointing a receiver will ensure that the rent is used to operate the property. *See* ECF No. 29-1 at 11. So Plaintiff's motion will be granted.

One last wrinkle here is the party's dispute over who to appoint as a receiver. Plaintiff asks the Court to appoint OPEX CRE Management, LLC (OPEX), while Defendant believes that if a receiver must be appointed, it should be a more local one. *See generally* ECF No. 33. After reviewing Plaintiff's proposal, the Court finds that OPEX is capable to serve as a receiver in this matter. *See* ECF No. 35 at 6-8 (detailing OPEX's qualifications and previous work serving as a receiver).

## V.    CONCLUSION

For the reasons laid out above, summary judgment on all counts is entered in favor of Plaintiff and the motion to appoint a receiver is granted. An appropriate order follows.

BY THE COURT:


 */s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge